[No. 1652.  Decided September 5, 1895.]

S. J. MARQUIS et al., Appellants, v. D. F. WILLARD et al., Respondents.

OFFICIAL BONDS — LIABILITY OF SURETIES — ACTS DONE UNDER COLOR OF OFFICE.

The sureties upon the official bond of a chief of police cannot be held liable for his acts in receiving and detaining in the city prison persons arrested without warrant or other process, by police officers of the city, as such acts at most are not done *virtute officii* but *colore officii*.

Appeal from Superior Court, King County.

*McLaughlin, Remsberg & Atkinson*, and *Thompson, Edsen &. Humphries*, for appellants.

*James Leddy, W. T. Scott*, and *Frank A. Steele* (*Gleason & Babcock*, of counsel), for respondents.

The opinion of the court was delivered by

HOYT, C. J.—These actions were prosecuted against the respondent D. F. Willard, as principal, and the

other respondents, as sureties, upon the official bond of said Willard as chief of police of the city of Seattle. The superior court sustained the separate demurrers of the several respondents, and, the plaintiffs refusing to amend, judgments were entered dismissing the actions.

By stipulation of the parties, it is agreed that the investigation shall be confined to the ruling of the superior court upon the demurrers of the sureties, and, if it is found that such demurrers were rightfully sustained, that the judgments shall, as a whole, be affirmed, by reason of which we are not called upon to determine the question as to whether or not the complaints stated causes of action against the respondent Willard, and have only to determine their sufficiency as against the sureties in the said bond.

The acts of the respondent Willard, which are set out in the complaint and relied upon as constituting a breach of the conditions of the bond, consisted in receiving into the city prison, of which it was alleged he was by virtue of his office the keeper, the plaintiffs, who had been arrested by certain police officers of the city of Seattle, upon suspicion that they had been guilty of a crime, and detaining them in such prison for thirty-two hours without any warrant or other process authorizing him so to do.

It is not alleged in the complaints that the defendant Willard as chief of police, or otherwise, arrested the plaintiffs, and the only connection which he is alleged to have had with the transactions was to receive them into the prison and detain them as above stated. Did this action on his part make the sureties upon his official bond liable in damages to the plaintiffs?

It is open to serious question whether or not these acts were in any sense official acts. No case has been called

34 — 12 WASH.

to our attention by appellants, nor have we been able to find one, which goes to the extent of holding that the keeper of a prison, in his official capacity as such, has any right to receive and detain any person without some warrant or other process authorizing him so to do; and if he has no such authority in the absence of process, if he receive a person without one, his act in so doing is not within the scope of his authority as keeper of the prison.    If it be the rule that the keeper of a prison has no authority as such except by virtue of process delivered to him, it must follow that in receiving a prisoner without warrant from an officer who had arrested him, he would be acting in his private capacity as the agent of such officer.    Until some case has been cited holding that the keeper of a prison has authority without process to receive and detain a person accused of crime, we should be strongly inclined to hold, were it necessary, that he has no such authority.

But in the cases at bar, it is not necessary for us to decide this question, for even if it be conceded that the respondent Willard, as keeper of the prison, had authority in a proper case to receive and detain a person suspected of crime without process delivered to him for that purpose, the allegations of the complaints negative the conclusion that in so receiving and detaining the plaintiffs, he acted by virtue of his office as chief of police and keeper of the prison.    It is therein alleged that at the time he committed the acts complained of, there was no probable cause to believe the plaintiffs guilty of any crime.    This being so, the respondent Willard in receiving them without process did not do so by virtue of his office, but at most only under color of office.    This is conceded in the brief of appellant.    Were such acts under color of office with-

out process, such official acts that the sureties upon his official bond are liable therefor?

There is great diversity of opinion upon the question as to the liability of sureties upon official bonds for acts done under color of office. The cases uniformly hold that such sureties are liable for wrongful performance of acts which, if properly done, would be justified by his official character. But upon the question as to their liability when the act is one which is a trespass from the beginning and unauthorized by his official character, however performed, there is great apparent want of harmony among the cases. We say "apparent want of harmony" for the reason that in our opinion a careful examination will show that the conflict between the courts of most of the states is more apparent than real. The most of the cases which have held that the sureties were liable, even though the action of the officer was but a naked trespass, have been those in which the officer having process in his hands which authorized his acts as against the person or property therein named, had wrongfully enforced the same against other property or a different person. It is clear that in such a case the process furnishes no justification to the officer, and he is as much a trespasser when by virtue thereof he levies upon the property of a person not named therein as he would have been without process. Yet many, and perhaps a majority of the courts have held that the person whose property is so taken may maintain an action upon the official bond to recover damages therefor. And it is claimed on the part of the appellants that these cases are in point upon the question under consideration. All the cases cited by them, with the exception of those from the State of Iowa and, perhaps, one from the appellate court of the State of Illinois, were of this

MARQUIS v. WILLARD.

nature.  And if, in our opinion, they were in point here, we should be inclined to agree with their contention that the weight of authority required us to hold that the complaints stated causes of action against the sureties, though cases can be found from other courts of equal authority which hold that a levy upon the property of a third person, under process directed to the officer, will not authorize a recovery by such third person upon his official bond.  But this class of cases, however decided, can have but little weight in deciding the question under consideration.

For an officer to serve process placed in his hands for that purpose, is a strictly official act, and while such process would only justify him in a proper service of it, yet an improper service might be in an attempt to obey its command.  It was as an officer that he received the process, and his acts under it, whether rightful or not, may well be held to have been by virtue of the office.  But for the office he would not have had the process.  Without it his acts would have been impossible.  Hence such acts might well be said to be official.  And since under all the authorities, the sureties are liable for acts done by virtue of the office, there is reason for holding them liable for the wrongful acts of the officer in the execution of process, even though in doing them he so departs from its command as to be a trespasser.  But, when an officer without process does an act which under the law he has no right to do, he cannot in any proper sense be said to be acting by virtue of his office, and it is going far enough to hold that in so doing he is acting under color of office.  Such is the reasonable rule.  When he has neither process in his hands authorizing him to act, nor any provision of law upon which he can found his action, there would seem to be no reason for

holding that the act was by virtue of his character as an officer. This conclusion is in our opinion sustained by the great weight of authority.

In *State v. McDonough,* 9 Mo. App. 63, the breach of the bond was charged to be that the principal " without warrant or authority of law, as chief of police, and by virtue of, and under color of his office, wrongfully and maliciously arrested the relator and imprisoned him, etc." A demurrer to the complaint was sustained upon the ground that the act was not by virtue of his office, but was at most only by color of office. In the opinion occurs the following language:

"The fact that under color of his office, an officer does an act which is in its inception beyond, and out of the line of his duty, does not show or tend to show that in any case he did not faithfully perform it; and if he does this, why should his sureties be held, whose obligation cannot be extended beyond the terms of the bond? Here, assuming what is stated to be true, the defendant, not in the manner of doing what it was his duty to do, but in taking any action, went outside of and beyond his duties. The act done was not within the scope of the bond. Thus, though it was done *colore officii,* the sureties are not liable."

In *Huffman v. Koppelkom,* 8 Neb. 344, it was contended that the sureties were not liable because the act done was not by virtue of the office, but only under color of it, and the court in its opinion made use of the following language:

"The second objection to this petition and the one most relied on in this argument is, that an action can be maintained on an official bond only for injuries done *virtute officii,* and not for acts done *colore officii* merely. And so we believe the law to be according to the best authorities."

In *Ottenstein v. Alpaugh,* 9 Neb. 237 (2 N. W. 219),

it was again held by the same court, that the sureties on an official bond are answerable only for such acts of their principals as are done *virtute officii*.

In *Gerber v. Ackley*, 37 Wis. 43 (19 Am. Rep. 751), it was held that the sureties were only liable for acts done by virtue of the office, and not merely for acts done under color of office. In this case the facts showed that the officer was assuming to act under a writ of replevin, and under many authorities what he did would have been held to have been by virtue of his office; yet notwithstanding this fact that learned court held that his sureties were not liable. In 32 Wis. 233, the same case had been before the court and a similar ruling intimated, but, owing to the state of the pleadings, not definitely announced. *State v. Mann*, 21 Wis. 692, is to the same effect.

In *McLendon v. State*, 92 Tenn. 520 (21 L. R. A. 738, 22 S. W. 200), the supreme court of Tennessee held that the sureties upon an official bond were not liable for the action of an officer under a process which was void upon its face.

As we have before suggested, a large number of cases have been cited by the appellant to establish a contrary doctrine, but a careful examination has satisfied us that, with the exception of those from the state of Iowa, they tend slightly, if at all, to overthrow the authority of the cases cited by the respondents. They nearly all belong to the class which, as we have seen, are not in point where the facts are as in the case at bar, and some of them show upon their face that the court had in mind the distinction between the case under consideration and one where the facts were as in these.

The case of *State v. Beckner*, 132 Ind. 371 (32 Am. St. Rep. 257, 31 N. E. 950), furnishes an example

of cases of this kind. It was there held that the sureties were liable for a mistake made by an officer in the service of process placed in his hands; yet that the court intended to announce a principle which would apply where the facts were as in the cases at bar, is directly negatived by the incorporation in its opinion of the following language:

" It is contended by counsel for the appellant that in view of the facts disclosed by the verdict the constable was acting *virtute officii,* not merely *colore officii.* With this contention we are in accord. The constable had a legal process, and his sole purpose seems to have been the execution of the command which it carried to him. There is some conflict of authority as to whether or not there is a right of action on the bond of a ministerial officer for an unlawful act done *colore officii.* But when the officer is acting *virtute officii,* the authorities all agree that a suit will lie upon his bond."

The case of *Ex parte Reed,* 4 Hill, 572, is relied upon by the appellants and has been cited as authority in nearly all of the cases cited by them. An examination of the facts upon which it was decided, will show that the officer was acting under process. For that reason this case and those founded upon it are not in point upon the question here presented.

The ruling of the superior court was in accordance with reason and is sustained by a decided weight of authority.

The judgments will be affirmed.

ANDERS, GORDON and SCOTT, JJ., concur.

DUNBAR, J., dissents.