[No. 13252. Department One. August 4, 1916.]

A. W. GREENIUS et al., Appellants, v. AMERICAN SURETY COMPANY OF NEW YORK, Respondent, S. B. MOORE, Defendant.[1]

SHERIFFS AND CONSTABLES—ARREST—RIGHT TO MAKE ARREST—OFFICER WITHOUT WARRANT. A peace officer is authorized to make an arrest without warrant after a felony had been committed where he had reasonable grounds to believe that the party arrested had committed a felony.

SAME — UNLAWFUL ARREST — ACTION ON OFFICIAL BOND — ACTS COLORE OR VIRTUTE OFFICII. Where a constable makes an arrest without warrant and without reasonable grounds for believing that the party arrested had committed a felony, he nevertheless acts virtute officii, and renders the surety upon his official bond liable for the trespass committed.

SAME—UNLAWFUL ARREST—ACTION ON OFFICIAL BOND—PLEADING. A complaint upon the official bond of a constable for making an unlawful arrest without warrant properly alleges that the plaintiffs had not committed a felony and that the constable had no reasonable grounds for believing that they had done so.

[1]Reported in 159 Pac. 384.

Appeal from a judgment of the superior court for Snohomish county, Bell, J., entered November 20, 1915, dismissing an action upon an official bond, upon sustaining a demurrer to the complaint. Reversed.

*Cooley & Horan* and *R. Mulvihill*, for appellant.

*Sherwood & Mansfield*, for respondent.

CHADWICK, J.—Defendant Moore is the duly elected, qualified, and acting constable of Monroe precinct, in Snohomish county. Respondent, American Surety Company, is surety upon his official bond. The condition of the bond is:

"Now, therefore, if the said Samuel B. Moore will execute all process to him directed and delivered and pay over all moneys received by him by virtue of his office, and in every respect discharge all duties of a constable according to law during the term for which he was elected and until his successor is duly elected and qualified and while he shall act as such constable, and shall faithfully discharge all duties which may be required of him by any law enacted subsequent to the execution of this bond, then this obligation shall be void, otherwise to remain in full force and effect."

A felony had been committed, and Moore, whom we shall refer to as the defendant, was directed to apprehend the guilty parties. The right of a constable to arrest without warrant has not been defined by statute. Authority to do so is to be found in the common law. At common law, a peace officer could arrest without a warrant when he had reasonable grounds for believing that the party arrested had committed a felony. 4 Blackstone, Commentaries, 292; 3 Cyc. 878; Murfree, Sheriffs, § 1161.

The material parts of the complaint are:

"(3) That on or about the 19th day of July, 1915, *a felony was committed* at Duvall in the county of King, state of Washington, by some person or persons unknown to these plaintiffs and the defendant S. B. Moore as such constable was informed of the commission of said felony and directed to arrest and apprehend the guilty parties. That the said

S. B. Moore as such constable acting upon said information and in pursuance to said directions and by virtue of his authority as constable of said Monroe precinct, but without any warrant or other written process did arrest these plaintiffs and in making said arrest the said S. B. Moore did commit an assault upon each of said plaintiffs in said Monroe precinct and at the same time and place, by then and there shooting the said Minnie Greenius, plaintiff, and as a result of said shooting the said Minnie Greenius was struck by a bullet in the hip joint and a portion of said bullet passing on down through the leg and lodged in the flesh about six inches below the hip joint; that the said Minnie Greenius has suffered great pain and anguish as the result of said injury and shooting. That said injury is permanent and said Minnie Greenius will continue to suffer great pain and anguish in the future. That said constable in shooting at these plaintiffs mistook them for the persons who committed a felony."

"(5) That immediately after said assault upon these plaintiffs by the said shooting the said constable took both of said plaintiffs into his custody claiming that said plaintiffs were the persons who committed the felony aforesaid at Duvall and said constable held these plaintiffs in custody by virtue of his authority as constable for the period of six hours in Monroe precinct. That as a result of said holding in custody the plaintiffs and each of them suffered great mental anguish, pain and humiliation."

"(6) That said plaintiffs did not commit any felony at any time and the said constable did not have any reasonable grounds for believing that these plaintiffs committed any felony at any time or place."

It is insisted by counsel for respondent, and the court below so held, that the complaint sets forth a naked trespass, an act done *colore officii*, for which the surety is not liable. Much mental energy has been expended in drawing distinctions between acts of public officers done *colore officii*, and acts done *virtute officii*, and we shall not undertake to assemble definitions. Our understanding is that, when an officer acts in the performance of his duty and, so acting, acts to the hurt or annoyance of a third party or an innocent party, he is nevertheless acting in virtue of his office. That

is to say, if his office gives him authority to act, he is acting in virtue of his office, although, in the performance of a specific duty, he improperly exercises his authority. For instance, if an officer have a warrant for "A" and, without reasonable ground for believing him to be the guilty person, takes "B," he is still acting in virtue of his office. If it were not so, he would never be liable upon his bond. Nor would his surety ever be liable except for his lawful acts, which is *reductio ad absurdum*, for it follows that there could be no liability if there had been no breach of duty.

An official bond is a promise to the state and to all third parties that, in the execution of legal duty, the officer will do it well and without hurt to strangers to his process. The best argument against attempting to fix an arbitrary line of demarcation between acts done *colore officii* and those done in virtue of office is that the cases, after an hundred years of exposition, are in hopeless and interminable confusion. The later authorities preponderate, however, in favor of the doctrine that, if an officer have process against "A" and, without reasonable ground for believing him to be the guilty person, execute it upon the person or property of "B," his sureties are liable where the bond is conditioned for the faithful performance of the duties of his office. Throop, Public Officers (Sureties etc.), § 240; Murfree, Sheriffs, §§ 46a, 47a; Brandt, Suretyship and Guaranty (2d ed.), § 566.

A complaint, in legal effect not unlike the one before us, was held good as against a motion in arrest of judgment based upon the ground that the complaint did not state a cause of action in that it showed that defendant was a trespasser in *Clancy v. Kenworthy*, 74 Iowa 740, 35 N. W. 427, 7 Am. St. 508. In *Hall v. Tierney*, 89 Minn. 407, 95 N. W. 219, the court says:

"And this attempted distinction led to very much refinement and fanciful reasoning by the courts, as will be seen upon examining the authorities. . . .

"But of later years, and certainly in this court, this refined and fanciful distinction has been disregarded, and it has been held, in effect, that for improper acts performed by an officer under color of his office the sureties upon his bond can be held liable.   .   .   .

" 'The object of an official bond is to obtain indemnity against the misuse of an official position for wrong purposes; and that which is done under color of office, and which would obtain no credit except for its appearing to be a regular official act, is within the protection of the bond, and must be made good by those who signed it.'   Murfree, Official Bonds, § 211."

The claimed distinctions between acts done *colore officii* and acts done *virtute officii* are pointed out and rejected in *Lee v. Charmley*, 20 N. D. 570, 129 N. W. 448, 33 L. R. A. (N. S.) 275:

"The distinction made between the official acts that serve as the basis of these conflicting lines of authority is that 'acts done *virtute officii* are where they are within the authority of the officer, but in doing them he exercises that authority improperly or abuses the confidence which the law reposes in him; while acts done *colore officii* are where they are of such a nature that his office gives him no authority to do them'   .   .   .

"The almost uniform current of the later cases, however, regards wrongful acts of a public officer *colore officii* as official acts, for which the sureties upon his bond are liable."

See, also, *Lammon v. Feusier*, 111 U. S. 17-21, where the authorities are collected.  We think, too, that this court is committed to the later and better rule, and is in line with the preponderating authority.  We held the surety of an officer liable for a wrongful arrest in *Weber v. Doust*, 81 Wash. 668, 143 Pac. 148.  This holding was not questioned on rehearing (*Id.*, 84 Wash. 330, 146 Pac. 623).  In *White v. Jansen*, 81 Wash. 435, 142 Pac. 1140, although holding that a reasonable ground for believing that the plaintiff had committed a felony was a defense, the liability of the officer, in the absence of such probable cause, was not questioned.

Nor do we attach the meaning to paragraph 6 of the complaint that is given to it by respondents. It is a proper allegation of the ultimate fact, the affirmation and denial of which make up the ultimate issue.

It may well be questioned whether the complaint would be good under the doctrine of *White v. Jansen, supra,* where it is said:

"We think it was, therefore, a question for the jury whether the sheriff had reasonable grounds for supposing or believing that the respondent was the person charged with the crime;"

or, to meet the facts in this case, the persons who had committed a felony.

We are told that the judgment was based upon *Marquis v. Willard,* 12 Wash. 528, 41 Pac. 889, 50 Am. St. 906. Granting that the holding of the court in that case—that the chief of police and *ex-officio* city jailer had no authority in law to incarcerate the plaintiff or any other person—was correct as applied to the facts involved, it can have no application in a case of this kind, for here defendant had authority to make arrests. If the jailer, having authority to confine a prisoner in the city jail, had, in breach of his duty, put the prisoner to hard labor, or otherwise mistreated or maltreated him, the cases would be parallel. This distinction is noted in the opinion:

"The most of the cases which have held that the sureties were liable, even though the action of the officer was but a naked trespass, have been those in which the officer having process in his hands which authorized his acts as against the person or property therein named, had wrongfully enforced the same against other property or a different person. It is clear that in such a case the process furnishes no justification to the officer, and he is as much a trespasser when by virtue thereof he levies upon the property of a person not named therein as he would have been without process. . . .

"For an officer to serve process placed in his hands for that purpose, is a strictly official act, and while such process would only justify him in a proper service of it, yet an im-

proper service might be in an attempt to obey its command. It was as an officer that he received the process, and his acts under it, whether rightful or not, may well be held to have been by virtue of the office. But for the office he would not have had the process. Without it his acts would have been impossible. Hence such acts might well be said to be official. And since under all the authorities, the sureties are liable for acts done by virtue of the office, there is reason for holding them liable for the wrongful acts of the officer in the execution of process, even though in doing them he so departs from its command as to be a trespasser. But, when an officer without process does an act which under the law he has no right to do, he cannot in any proper sense be said to be acting by virtue of his office, and it is going far enough to hold that in so doing he is acting under color of office. Such is the reasonable rule."

We think the use of the words, "when an officer without process does an act which, under the law, he has no right to do," was ill advised. The court should have said, rather, that when one who is an officer is engaged outside of the performance of any duty imposed by law, his surety is not liable. For, as we have said, and there can be no doubt as to the present state of the law, a felony having been committed, an officer, having authority to arrest without warrant or process, subject only to proof of reasonable cause as explained in the *White* case, is engaged in the performance of official duty when he goes in search of the offender. It makes no difference whether he is with or without process or warrant. He is an officer just the same, and his acts, whether right or wrong, are in *virtute officii*. It is only necessary to read the cases to understand that no other rule is either practical or tolerable. If an officer engaged in a search for either goods or persons can run amuck, saying, this I did in excess and in violation of my duty and my bondsmen are not, therefore, liable, we can imagine no case where a surety might be held. The primary purpose of a bond is to insure third parties against the mistakes and trespasses of officers when officially engaged.

Defendant was guilty of a breach of official duty, and it follows that his surety must answer to the merit of the complaint.

Reversed and remanded, with directions to overrule the demurrer of the respondent.

MORRIS, C. J., MOUNT, FULLERTON, and ELLIS, JJ., concur.