[No. 15578½. Department One. March 8, 1920.]

## HARRY J. EBERHART, *Respondent*, v. WILLIAM P. MURPHY et al., *Appellants.*[1]

ACTIONS (7)—CONDITIONS PRECEDENT—LEAVE OF COURT—ACTION ON OFFICIAL BOND—WAIVER. Under Rem. Code, § 960, requiring leave of court to a private party to sue upon an official bond, the failure of the complaint to show leave must be promptly moved against, and is waived by answer on which the case was tried and the point raised only by belated motion for nonsuit.

CONTINUANCE (11)—GROUNDS—ABSENCE OF COUNSEL. It is not error to refuse defendants a continuance on the ground of the withdrawal of their attorneys, where the attorneys acted within their contract made two years before, the case was not tried until a month after their withdrawal, and a codefendant surety company had ample time to adjust itself to changed conditions.

SAME (13, 18)—ABSENCE OF WITNESS—DILIGENCE—DISCRETION. It is not an abuse of discretion to refuse a new trial on account of the absence overseas of a witness, where it appears that the witness was prosecuting attorney of another county, who, under Rem. Code, § 1215, could not be compelled to attend as a witness, and the case had been at issue for about two years and no move made to take depositions.

FALSE IMPRISONMENT (6)—ARREST WITHOUT WARRANT—PROBABLE CAUSE—QUESTION FOR JURY. There is a question for the jury as to

[1]Reported in 188 Pac. 17.

probable cause for the sheriff's arrest of plaintiff without a warrant for the larceny of an automobile, upon a suggestion of a prosecuting attorney of another county that the matter be settled, failing which, he would file an information but stating no facts and only his conclusion that the plaintiff had committed grand larceny, where, upon disputed evidence, it appeared that plaintiff appeared before the sheriff and denied committing any wrong, and was arrested on refusing to pay a claim of $250 which he denied owing.

SHERIFFS AND CONSTABLES (12-1, 36)—DUTY TO PRISONERS—REASONABLE CARE—QUESTION FOR JURY. The sheriff is liable for injuries sustained by a prisoner at the hands of other prisoners acting as a "Kangaroo Court," where his want of reasonable care is shown by the character of the other prisoners and knowledge of a prior case of brutal treatment, and he had approved rules warranting "severe punishment" for failure to pay fines, the other prisoners knew the exact amount of money taken from him by the sheriff, who on releasing plaintiff, withheld the amount of a fine exacted under a threat of further punishment.

TRIAL (141)—VERDICT—SPECIAL FINDINGS—INCONSISTENCY. In an action for false imprisonment, the answer to a special interrogatory referring to only a portion of the evidence as to probable cause, is not inconsistent with a general verdict finding no probable cause.

HOLCOMB, C. J., and MACKINTOSH, J., dissent.

Appeal from a judgment of the superior court for Yakima county, Taylor, J., entered March 27, 1919, upon the verdict of a jury rendered in favor of the plaintiff, for the sum of $2,000, in an action upon a sheriff's official bond, after a trial on the merits. Affirmed.

*Williamson & Luhman,* for appellants.
*Grady & Shumate,* for respondent.

MITCHELL, J.—This suit consists of two causes of action against William P. Murphy, sheriff of Yakima county, and the Massachusetts Bonding and Insurance Company, as surety on the sheriff's official bond. The first cause of action is on account of an alleged false arrest and imprisonment; the second alleges that, upon being confined in the county jail, plaintiff was made

the victim of a mock trial by the other inmates during the progress of which he was assaulted and seriously injured. There was a verdict and judgment for the plaintiff, and defendants have appealed.

In the first cause of action, it is alleged the sheriff arrested respondent on the 11th day of June, 1917, and confined him in the county jail without having any warrant therefor, causing him to suffer shame and mortification and injuring him in his reputation and social standing. In the second cause of action, it is alleged that, upon being arrested, he was thrown into the county jail in which were confined criminals, among others, negroes and Indians, some of whom were dangerous and desperate men and well known as such to the sheriff; that he was seized by the other prisoners, who purported to conduct a mock trial, during which he was assaulted, beaten and seriously injured, necessitating hospital treatment, the care of a physician, and a surgical operation; that, at and prior to his imprisonment and injuries, the sheriff and his deputies knew of the custom of prisoners in the jail to hold such mock trials and mistreat and beat prisoners, and having such knowledge, took no steps whatever to protect respondent, although by ordinary care on the part of the sheriff and his deputies the assault and injuries upon respondent could have been prevented.

Appellants separately answered, setting up practically the same defenses. As to the first cause of action, it was denied that the arrest was without a warrant, and it was further alleged that the sheriff made the arrest by authority of a warrant which he knew had on that day been issued upon an information filed in the superior court of Whatcom county charging respondent with the crime of grand larceny; that, on June 11, 1917, one Leighton told the sheriff that respondent had stolen an automobile belonging to him

and respondent, and that the sheriff believed and in good faith relied on the statement; that, on the day of the arrest, the sheriff had a telephone conversation with the prosecuting attorney of Whatcom county and was by him informed of the theft of the automobile by respondent; that the sheriff relied on and believed that information and had reasonable grounds to believe respondent guilty; that, on the day of the arrest, the sheriff had in his possession a letter from the same prosecuting attorney advising that respondent was guilty of grand larceny and directing the sheriff to prevent his escape, and that the sheriff relied on the statements; and that, on the day of the arrest, in conversation with the sheriff, the respondent admitted the crime with which he was charged; and that the sheriff arrested respondent only after acquiring all such information, and that there were reasonable grounds for his belief that respondent had committed a crime.

As to the second cause of action, after denying allegations showing liability, each answer affirmatively stated that respondent provoked and was responsible for the assault made upon him by the other prisoners and that the sheriff or his deputies were in no way aware of it nor directly or impliedly responsible therefor.

By stipulation, the complaint was amended by interlineation in material respects; and thereafter, on September 27, 1917, respondent moved to strike certain portions of each of the answers. On October 6, 1917, the bonding company moved for a judgment of nonsuit for the reason the complaint did not state that leave of court had been granted to sue on the sheriff's bond. On October 22, 1917, the motion to strike certain portions of the answers was granted in part and denied in other respects; and at the same time the motion for

nonsuit for want of leave of court to sue on the bond was denied. Thereafter, on October 29, 1917, amended answers were filed setting up with more particularity the facts alleged in the original answers. Replies were filed to the amended answers.

There was considerable delay in the trial of the action without any fault of respondent. A trial was set for the June term, 1918, but, at request of appellants, because of the illness of one of the attorneys for the sheriff, it was continued over upon written stipulation among the parties which, among other things, provided that depositions might be taken by either party upon reasonable notice in the event it was considered necessary by reason of the delay in the trial and that witnesses might go away and could not be produced at the trial. The next jury session to be held was January, 1919; and on December 6, 1918, respondent noted the case for trial, and on December 9, 1918, it was assigned for trial on January 7, 1919. It appears the jury session was postponed until February; and on January 27, 1919, the case was set for trial on February 5, 1919. On January 29, 1919, the attorneys for the sheriff withdrew from the case. On January 31, 1919, both appellants moved for a continuance of the trial over the jury term. The motion was supported and resisted by affidavits, and within a few days, upon being presented, a continuance was denied, except it was reassigned for February 24, 1919, at which time the trial took place.

The case is brought here upon numerous assignments of error which are argued in the briefs upon six propositions:

(a) That a statutory nonsuit should have been granted the bonding company under Rem. Code, § 960. That section provides for leave of court to a private party to sue on an official bond. It is clear from a reading of the whole section its purpose is to protect those

liable on such bonds from frivolous actions. The failure of the complaint to show such authority must be promptly moved against or the point considered waived. Here, after a stipulation for amending the complaint in important respects, after answers setting up the same denials and defenses as those subsequently amplified in amended answers upon which the case was tried, and after the answers had been moved against, the appellants interposed the belated motion for a non-suit. No leave was asked or obtained to withdraw the answer to interpose the motion, which we think came too late. In *Nye v. Kelly,* 19 Wash. 73, 52 Pac. 528, it was said:

"Instead of moving against the complaint they demanded a bill of particulars, and, that having been furnished, they saw fit to answer to the merits, and we think the objection was thereby waived. While the question is perhaps not solely a question of pleading, nevertheless the objection, to be available, should be promptly made."

The same principle is recognized in the case of *Hunter v. Berridge,* 103 Wash. 536, 175 Pac. 165, where it was held that a demurrer answered the purpose of a motion, to present the objection to the complaint, and that pleading over after the demurrer did not waive the objection.

(b) It is contended the court erred in denying appellants' motion for a continuance. This is important as to the first cause of action only. It is claimed the sheriff was unable to be represented at the trial by counsel because of their withdrawal. It appears his attorneys acted entirely within their contract made nearly two years before, and besides the case was not tried for nearly a month after the attorneys withdrew. The contention that the sheriff was too busy with the important work of the local board under the selective

service act was met with strong affidavits that at that time the board was closing up its work, to which the sheriff then gave very little of his time, and when the trial took place nearly a month later, the sheriff did attend and testify. The bonding company claims that, because it had largely depended upon the sheriff to look after the case, the withdrawal of his attorneys justified a continuance so far as it was concerned. The respondent was in no way responsible for that dependence, and, as has been noticed, the bonding company made and maintained a separate appearance through the whole of the case, and had nearly a month's time after the withdrawal of the attorneys for the sheriff, and before the trial, to adjust itself to changed conditions.

It is claimed a continuance should have been granted because appellants learned on January 31, 1919, for the first time, that the prosecuting attorney of Whatcom county had been absent since August, 1918, engaged in overseas work in Italy; that he was a necessary witness and would testify that over the telephone he informed the sheriff a warrant had been issued in Whatcom county for the arrest of the respondent and placed in the hands of the sheriff of Whatcom county, who was then on his way to Yakima county to arrest respondent, and instructed appellant Murphy to hold respondent; that such conversation occurred prior to the arrest of the respondent by the appellant Murphy, and that there was no other witness by which the same could be proved. Under § 1215, Rem. Code, the prosecuting attorney of Whatcom county could not be compelled to attend as a witness in the trial of this case in Yakima county. The affidavits are wholly silent as to the witness ever having been spoken to for the purpose of having him appear in person to testify at the trial or to keep appellants advised if he intended to

leave the state. Section 1232 of Rem. Code provides
either party may commence taking testimony by de-
positions at any time after the service of the summons
upon the defendants. This action was commenced in
June, 1917, and the witness remained in Whatcom
county until August, 1918. *Juch v. Hanna,* 11 Wash.
676, 40 Pac. 341. At the time of his leaving, it appears
the newspapers of Whatcom county and also of the
city of Seattle gave considerable publicity to his
leaving for overseas duty. In other respects the
motion for a continuance was fully met by respondent,
and in our opinion the trial court did not abuse its
discretion in denying the motion. In this connection
it may be mentioned that what we shall find to be the
arrest of respondent occurred prior to the conversa-
tion with the prosecuting attorney of Whatcom county,
according to the undisputed testimony of the sheriff
and his witnesses.

(c) It is contended by appellants the sheriff could
arrest without possession of a warrant when he had
reasonable grounds to believe an arrest warrant was
out, or had reasonable grounds to believe a felony had
been committed. The evidence shows that, on June 11,
1917, Leighton personally presented to the sheriff a
letter from the prosecuting attorney of Whatcom
county, containing, among other things, the following:

"Mr. Leighton has had some business relations with
Harry J. Eberhart, and I am of the opinion that, as a
result of the representations and pretenses made by
Mr. Eberhart, that he is guilty of the crime of grand
larceny. However, it is not the desire of any one con-
cerned to cause a prosecution of Mr. Eberhart, which
would result in expense to the taxpayers, if it is possi-
ble to avoid such a prosecution.

"I have suggested to Mr. Leighton that he go to
North Yakima and see Mr. Eberhart, and endeavor to
arrange with him for an immediate settlement of the

matter in issue, and in the event of his inability to settle the matter satisfactorily, that he request your office to cause the arrest of Mr. Eberhart and wire me over your signature to that effect, whereupon I will at once file an information and place a warrant in the hands of the sheriff with instructions to go to Yakima.''

Upon the request of the sheriff, through a deputy, respondent went in his own automobile to the sheriff's office about 2:30 p. m., where considerable conversation was had, those present being the sheriff, a deputy, Leighton, and a personal friend of his, and the respondent. There is much dispute as to some of the details of the conversation and what happened, but the jury may well have been satisfied that, on reaching the sheriff's office, respondent positively denied having done anything wrong, or that he owed Leighton anything; that the sheriff asked him, ''Will you pay this man $250?'' to which respondent replied, ''No, I don't owe him any money;'' that thereupon the sheriff asked, ''Do you resist?'' to which respondent answered, ''Resist what?'' and thereupon, by the direction of the sheriff, a deputy took the respondent into the jail, registered him, searched him and took money and trinkets from his pockets, kept him there for about three-quarters of an hour, when he was taken into an inner cell of the jail. The sheriff does not testify that respondent admitted he had stolen the automobile, as alleged in the answer, but only that he admitted he had the automobile there at the sheriff's office. It was after respondent was put in jail, and not until then, according to the sheriff's own testimony, that he had a talk over the telephone with the prosecuting attorney of Whatcom county about getting out an arrest warrant; and upon being advised a telegraphic warrant would be forwarded, the sheriff then had respondent locked in the inner jail, or tank, as it is spoken of, with other

prisoners. The sheriff contends respondent was not arrested until he was confined in the inner jail. Of course the sheriff is wrong, but this accounts for the statement, in the affidavit for a continuance, that the talk with the prosecuting attorney of Whatcom county occurred prior to the arrest. Having seen the sheriff had no arrest warrant, the rule is:

"The question of probable cause, or reasonable ground for suspicion in making an arrest, is one of law, unless the evidence out of which it arises is conflicting, in which event it is the duty of the court to instruct the jury what facts, if established, will constitute probable cause, and to submit to them only the question as to the existence of such facts." 2 R. C. L., page 451, § 6, under the title "Arrest."

Under the facts in this case, this cause of action was properly one for the jury, and in this connection it may be mentioned respondent not only insisted at the time of his arrest he had committed no crime, but has succeeded in that contention in the courts of this state. *State v. Eberhart,* 106 Wash. 222, 179 Pac. 853.

(d) Appellants claim the sheriff is not liable for the acts of the so-called "Kangaroo Court." Instead of the respondent's provoking the assault, as alleged by appellants, the evidence shows he retired as far as possible and acted purely in self-defense. That he was handled in a brutal manner, there can be no question; and the allegations as to his injuries and suffering are fully borne out by the proof. Appellants rely upon the case of *Riggs v. German,* 81 Wash. 128, 142 Pac. 479. But we do not agree with appellants' contention; and certainly we are not disposed to extend the doctrine of that case. In that case there was within the range of the proof no other instance of personal violence. In this case, the sheriff admits there was a prior case of brutal treatment during his term of office.

In that case, the seventeen rules of the kangaroo court were short and simple and contained no suggestion of corporal punishment. In this case, there are thirty more or less elaborate rules, some of which provide for admonition, others for fines, double fines, solitary confinement, scrubbing the jail, and in seven different places, provide for punishment. To illustrate the latter, rule 7 provides:

"Any person found soliciting or interfering with the officer's duties of the Kangaroo Court, shall be severely punished."

And it is likely in this very case when respondent refused, as he did, to pay a fine, it was considered sufficient to authorize severe punishment, which was at once inflicted upon him. In the *Riggs* case, it does not appear if the sheriff had approved the rules there in use, but in the present case the rules were approved and signed as follows:

"I hereby approve the above and foregoing Kangaroo Court rules this Eighteenth day of May, Nineteen Hundred and Seventeen, as far as they cover decorum but not fines nor punishment.          "W. P. Murphy,
                                                              "Sheriff."

The rules and the sheriff's approval were further dignified by the stamp of the official seal of the sheriff's office. The sheriff's indorsement is typewritten, other than his signature and the concluding words, "as far as they cover decorum but not fines nor punishment," which were written. Respondent testified the concluding written words were not on the instrument when it was shown to him in the jail at the time of the mock trial. This is denied by the sheriff. The respondent testified, and it was undenied, that, at the time of the mock trial, the prisoners stated the exact amount of money which had been taken from respondent by the deputy sheriff, and that, when he was released from

the jail that evening, upon *habeas corpus* proceedings, the sheriff's office restored to him the amount of money taken from him at the time of his being searched, less the sum of $2.50 paid to the kangaroo court upon an order therefor signed by respondent under the threat by the kangaroo court of further punishment. At the trial, the sheriff testified as follows:

"Q. You say you are not an advocate of these rules? A. No, I never believed in the system."

Certainly the sheriff owed a duty in the premises to the respondent—that of safe-keeping and protection from unlawful injury. His oath of office, his bond, and the necessary implications of law all point to such duty as imposed upon him. *Asher v. Cabell,* 50 Fed. 818; *Hixon v. Cupp,* 5 Okl. 545, 49 Pac. 927.

The question of the exercise of ordinary, reasonable care, in this respect, on the part of the sheriff, may vary at times and depend somewhat on the personnel of the prisoners. Under all the facts and circumstances in this case, we are satisfied the question of whether or not the sheriff exercised ordinary, reasonable care in the premises was one for the jury to determine.

(e) Exceptions were taken to a number of instructions given and to the refusal of the court to give others requested by appellants. An examination satisfies us that those given were proper, while those refused were either improper or else related to matters sufficiently covered by those given.

As to the first cause of action, it is claimed the motion for judgment *non obstante veredicto* should have been granted, because by an affirmative answer to a special interrogatory the jury found that the prosecuting attorney of Whatcom county informed Sheriff Murphy, before the imprisonment of respondent, that in his opinion the respondent was guilty of grand

larceny. But we do not agree. The finding is obviously based on the letter from the prosecuting attorney already quoted from, which states no facts, but only the conclusions of the writer. The answer of the jury refers to only a portion of the evidence upon the matter of reasonable cause, concerning which there was, altogether, a strong conflict of the evidence, and hence the special finding is not inconsistent with the general verdict.

(f) Lastly, it is urged the amount of the recovery allowed by the judgment is excessive. We are satisfied it is not.

Judgment affirmed.

MAIN and PARKER, JJ., concur.

HOLCOMB, C. J. (dissenting)—(1) Two elements are necessary to justify an arrest without warrant: a real belief and reasonable grounds for such belief that the party arrested committed the felony. 2 R. C. L. 450. The very fact in this case that Murphy was a stranger to all of the parties, the accused, the complaining witness, and the prosecuting attorney of Whatcom county, removes any possibility of contending that he acted without a real belief of the guilt of the accused. There are three distinct things which gave him this belief—the letter from Prosecutor Brown, the accusations of Leighton, and the demeanor of Eberhart when in conversation with Leighton and Murphy in Murphy's office. It is difficult to say that the evidence on these three grounds is in conflict. There is no dispute as to the letter from Prosecuting Attorney Brown. It is in evidence and speaks for itself. Nor is there conflict as to the conduct of Eberhart while in the sheriff's office nor what was told to the sheriff by Leighton. The facts causing his belief in Eberhart's guilt are established. This being so, it was for the court to say

whether or not they constituted probable cause or reasonable grounds for suspicion.

"The question of probable cause, or reasonable grounds for suspicion in making an arrest, is one of law, unless the evidence out of which it arises is conflicting, in which event it is the duty of the court to instruct the jury what facts, if established, will constitute probable cause, and to submit to them only the question as to the existence of such facts." 2 R. C. L. 451.

"What facts and circumstances amount to probable cause is a question of law." *Burk v. Howley,* 179 Pa. St. 539, 36 Atl. 327, 57 Am. St. 607.

By analogy, the case of *Borg v. Bringhurst,* 105 Wash. 521, 178 Pac. 450, renders this contention more plain. The fact that respondent has succeeded in the courts of this state in the contention that technically he had committed no crime should be of no effect in the determination of this question of probable cause for arrest without warrant. As said in *Burk v. Howley, supra:*

" 'Probable cause does not depend on the state of the case in point of fact, but upon the honest and reasonable belief of the party prosecuting.' "

(2) I cannot agree with the majority opinion and it seems to me that, in denying the motion for continuance, the trial court erred. This motion was based, in part, on the fact of the absence of W. P. Brown, the prosecuting attorney of Whatcom county, engaged in war service in Italy. The trial court was of the opinion that the testimony of Brown would be merely cumulative of Murphy's testimony. The defendants set forth in support of their motion that the testimony of Brown would be that over the telephone he informed the sheriff a warrant had been issued in Whatcom county for Eberhart's arrest; that he (Brown) told Murphy the warrant had been placed in

the hands of the sheriff of Whatcom county, who was then on his way to Yakima county to arrest Eberhart and that he instructed Murphy to hold Eberhart. This testimony would have shown an authority for, and a legal ratification of, the act of Murphy in detaining Eberhart. It would have taken the burden of Murphy's act from him and placed the responsibility upon Brown. Murphy was deprived of this testimony which would have corroborated his own. Murphy, being an interested witness, the jury could consider that fact and were left free to give whatever credence to this testimony they saw fit. Had the truth of Murphy's testimony been established or admitted, Brown's testimony to the same point would have been merely cumulative. As it was, it became corroborative and the defendant should have been given time to procure it. As pointed out in *People v. Barberi,* 149 N. Y. 256, 43 N. E. 635, 52 Am. St. 717:

"So long as the facts testified to by the party are not conclusively established, or admitted, they are still open to further proof."

See, also, *Page v. Krekey,* 137 N. Y. 307, 33 N. E. 311, 33 Am. St. 731, 21 L. R. A. 409.

The majority opinion bases its argument of lack of diligence on the part of appellants in securing the testimony of Brown before trial upon the fact that the fact of his being engaged in service in Italy was given considerable publicity in Whatcom county and Seattle newspapers. It does not seem to me that appellants can be charged with knowledge or notice of what was contained in the newspapers of those distant localities. No notice or knowledge of Brown's departure is brought home to them. Murphy could not be charged with lack of diligence because he failed to procure the testimony of this witness before trial. He

had no reason to believe that the prosecutor would not be available, and even if it could be said that he should have known and did know of Brown's absence, the difficulty of procuring the deposition of a person engaged in the military service and under the conditions which prevailed at the time would certainly free him from any contention of lack of diligence.

(3) Upon the general liability of the sheriff and his surety, as stated in *Riggs v. German,* 81 Wash. 128, 142 Pac. 479:

"The defendant [sheriff] is protected by a presumption that he has in all things performed his official duties, not the least of which is the exercise of reasonable and ordinary care to protect a prisoner while in custody. . . . 'Kangaroo courts' have come to be established institutions, and are encouraged by sheriffs and jailers. Their rules . . . indicate that their work is in aid of the work of a sheriff, whose duty it is to maintain a fit and suitable place to confine his prisoners and to protect the ones inclined to cleanliness and decency from those who are not."

The *Riggs* case has not been expressly overruled by the majority opinion in the present case, and the above remains the law in this state. The majority seek to distinguish the present case from the *Riggs* case in that in the latter there was within the range of proof no other instance of personal violence, while here the sheriff admitted there was a prior case of brutal treatment during his term of office. I am unable to perceive how the fact of bad treatment by another set of prisoners more than a year previous can put the sheriff on notice of liability of similar acts on the part of an altogether different set. Here the sheriff had expressly disapproved the "kangaroo court" rule apparently providing for corporal punishment and the rules stood substantially the same as those involved in the *Riggs* case.

As indicated in the *Riggs* case, the kangaroo courts are recognized as of beneficial use in the discipline and sanitation of the prisoners in the jails and prisons, and are the practical system which has grown up and become general throughout the country, and courts should bear that in mind when deciding questions of this nature. The majority opinion in this case, it seems to me, is a departure from the holding in the *Riggs* case and would necessitate that the sheriff should place a separate guard over each individual prisoner in order to *insure* his welfare and safety. No such tenderness to prisoners confined in jails is contemplated by the law.

"In *Riggs v. German, supra,* it is also declared that a sheriff cannot be charged with negligence in failing to prevent what he could not reasonably anticipate, and that a sheriff should not be required, in the exercise of ordinary care, to maintain himself or deputy in the presence and company of his prisoners unless the circumstances as developed by the testimony are such that it can be said that the sheriff had reasonable ground to apprehend the danger. So in the case at bar: The question of whether the sheriff or his deputy was negligent in his manner of keeping the prisoners together in one common room in the jail depends upon a number of circumstances, among which was the question of what was safest and most humane for the prisoners; what was most conducive to their health, well-being and safety; the character of the prisoners themselves, and their conduct; and possibly a number of other circumstances." *Kusah v. McCorkle,* 100 Wash. 318, 323, 170 Pac. 1023, L. R. A. 1918C 1158.

For the reasons above indicated I dissent.

MACKINTOSH, J., concurs with HOLCOMB, C. J.