[No. 19752. Department Two. March 29, 1926.]

ARTHUR JAHNS, *by his Guardian ad Litem Henry Jahns, Respondent,* v. HARRY C. CLARK *et al., Appellants.*[1]

[1] WITNESSES' (55)—COMPETENCY—CONFIDENTIAL RELATIONS—INFORMATION ACQUIRED BY PHYSICIAN. It is not error to exclude the testimony of a physician who had previously attended the adverse party in that capacity, called to make a subsequent examination, where the physician stated that it would be impossible for him to testify to what he discovered after termination of his relations, disconnected from what he learned at the time of his employment.

[2] EVIDENCE (206)—OPINIONS—CAUSE AND EFFECT—INJURIES TO PERSON. In an action for damages from shooting the plaintiff, it is not error to exclude the testimony of a non-expert that part of plaintiff's injuries was due to a physician's probing for the shot, especially where such an issue was not pleaded.

[3] SHERIFFS AND CONSTABLES (12, 33)—WRONGFUL ARREST—LIABILITY FOR ACTS OF DEPUTY—BURDEN OF PROOF. In an action against a sheriff and his deputy for the deputy's shooting the plaintiff, instructions properly place the burden on the defendants to show that the deputy had reasonable grounds to believe that the automobile at which he fired the shot contained violators of the law guilty of a felony, and that he was justified in shooting.

[4] SAME (12)—LIABILITY FOR ACTS OF DEPUTY. The sheriff's admission that he sent his deputy to capture "some bootleggers" at a place where it appears the deputy shot at plaintiff's automobile

[1]Reported in 244 Pac. 729.

in an endeavor to capture bootleggers, is sufficient to establish that the deputy was acting as a deputy sheriff under his direction.

[5] SAME (12, 33)—LIABILITY FOR ACTS OF DEPUTY—UNJUSTIFIABLE SHOOTING—COLOR OR VIRTUE OF OFFICE. A sheriff and the surety on his official bond are liable for the unjustifiable shooting of an innocent person by a deputy sheriff in attempting to make an arrest, even if the act was a wrong *ab initio*; the distinction between acts done *colore officii* and *virtute officii*, no longer being given effect to avoid liability in such a case.

Appeal from a judgment of the superior court for Spokane county, Huneke, J., entered May 8, 1925, upon the verdict of a jury rendered in favor of plaintiff, in an action in tort against peace officers and the surety upon an official bond. Affirmed.

*Williams & Cornelius,* for appellant Fidelity & Deposit Company.

*Charles H. Leavy, E. J. Farley,* and *M. E. Jesseph,* for appellant Clark.

*Thomas A. E. Lally,* for respondent.

MACKINTOSH, J.—The minor, who is prosecuting this action by his guardian ad litem, was shot by a deputy sheriff of Spokane county, and seeks to recover damages for the resulting injury. The deputy, who is the appellant Thomas, was sued along with the sheriff, appellant Clark, and the appellant surety company which furnished the statutory sheriff's bond. The shooting took place on the evening of October 16, 1924, and the evidence, as the jury had a right to view it, shows that the sheriff had sent the deputy Thomas, with other deputies, in the sheriff's automobile, to the neighborhood where the shooting took place, for the purpose of arresting or capturing bootleggers, who, he had reason to believe, were likely to pass on the highway at that time. Between six and eight o'clock in the

evening, it being dark at the time, the respondent and his brother were returning in an automobile to their home, located about a mile from the place where the shooting occurred. The brother was driving and the respondent was seated in the rear seat. Both the boys were innocent of any offense, nor were they on their way to commit any. No warrant was in the hands of any officer present for their arrest, nor for the arrest of any person. The automobile was being driven well within the statutory speed limit along the public highway.

When it approached the place where the officers were stationed, it did not increase its speed. While some little distance away from the officers, the boys saw a light ahead of the automobile and to the side of the highway. On account of the darkness it was impossible to see who was carrying the light, but it appeared to be in the hands of someone who was walking toward them. No signal was given which indicated a request for the automobile to stop, nor was any command to that effect made, nor was any exhibition made by the person carrying the light of any star or authority as a peace officer. Without any warning, when the automobile reached a point opposite the officers, a shot was fired, and when the car had proceeded about twenty feet farther a second shot was fired, which entered the body of the respondent. This shot was fired from a sawed-off shotgun belonging to the sheriff, and was fired by the appellant Thomas. The automobile was immediately stopped and the wounded boy was removed, the other deputies in the meantime having appeared at the car. After the boy had been removed, the appellant Thomas displayed his deputy sheriff star. A verdict was returned against all the appellants, and the judgment based thereon has been

appealed from by Thomas separately, and Clark and his surety joining in a separate appeal.

We shall first take up for consideration the points raised by the appeal of the deputy Thomas.

[1] It is claimed that the court committed error in rejecting the testimony of a doctor called by the appellants. It appears from the testimony that this doctor had originally been called to attend the boy soon after the shooting, and had been employed for that purpose by the respondent's father; that, shortly before the trial, and after the original employment had ceased, this same doctor had made an examination of the boy at the request of the appellants, for the purpose of testifying at the trial. When the doctor was produced upon the stand, objection was made to the introduction of his testimony for the reason that it was privileged communication. Authorities are cited on this point, that the privilege extends only to information acquired during the time that the relation of physician and patient exists, and does not prevent the physician from testifying to information regarding a patient which he may have acquired after the termination of that relationship.

But this rule does not cover the situation disclosed by the record. Even if the doctor might have been permitted to testify to what he discovered on an examination made by him for the express purpose of testifying, the record shows that the doctor himself said that he could not restrict his testimony to what he discovered at that examination; that the answers which he would be compelled to make would of necessity be based partly upon information which he derived during the continuation of the confidential relation, and that he could not disconnect what he learned at that time from what he learned when employed by the appellants

to make an examination for the purpose of testifying. The respondent offered to allow him to testify without objection to anything that he learned solely during the last examination, but by the doctor's own statement it was impossible for him to do this. There is no error, therefore, in the court's refusal to permit the introduction of this testimony.

[2] Offer of testimony was refused to show that a portion of the injury was caused by the act of the physician in probing for the shot. As we read the record on this point, the testimony sought to be introduced was through a federal prohibition officer, and not by a physician. Furthermore, there was no pleaded issue of this nature, and this offer was on an immaterial point, and its denial is not prejudicial.

[3] The last error assigned by appellant Thomas concerns the refusal to give three of his requested instructions and the giving of three other instructions by the court. The three instructions given by the court properly stated the issue in the case, and that was, whether the officers had reasonable ground to believe, and actually did believe, that the automobile at which the shot was fired contained violators of the law guilty of felony, that felony being, according to the evidence and pleadings in the case, the crime of bootlegging. *White v. Jansen,* 81 Wash. 435, 142 Pac. 1140; *Eberhart v. Murphy,* 110 Wash. 158, 188 Pac. 17; *Young v. Long,* 124 Wash. 460, 214 Pac. 821; *Coles v. McNamara,* 131 Wash. 377, 230 Pac. 430. These instructions fully and fairly stated the issue and the law applicable thereto, and placed the burden upon the appellant Thomas to show by the evidence that he was justified in firing the shot at the automobile. The instructions which were requested, in so far as they correctly stated the law, were amply covered by the instructions given, and of

course those portions of them which did not correctly state the law were properly refused.

We can find no error in the judgment in so far as it affects the appellant Thomas.

Passing now to the appeal of the sheriff and his surety, we find that, at the conclusion of the respondent's case in chief, these appellants made a statement that they then rested, and announced that they would not participate in the defense. The appellant Thomas then proceeded with his defense, and, at the end of all the testimony, the appellants Clark and the surety company, for the first time, challenged the sufficiency of the evidence and moved for judgment. These appellants now contend that the only part of the record that affects them is that which was introduced in the respondent's case in chief, and that their challenge to the evidence is to be determined from the record as it stood at the close of respondent's case, their claim being that, at that time, the evidence showed affirmatively that the respondent could not recover against these appellants.

[4] Assuming, without deciding, that the liability of these appellants is to be determined from the record as they contend, there appears enough therefrom to establish their liability. It is alleged in the complaint that the appellant Thomas and the other deputies were sent out by the sheriff to capture bootleggers and that, in compliance with this order, they went to the point where the shooting took place. In appellant Clark's answer to this complaint, he admits that on the day in question the appellant Thomas and other deputies "were sent in company with one H. S. McClure to capture some bootleggers." Although this does not, in words, say that the deputy was sent by the sheriff, in view of the allegation of the complaint to which this

portion of the answer is directed, it was an admission that the deputy was sent by the sheriff's order. This admission in the pleading, taken together with the evidence given on behalf of the respondent, was enough to establish the fact that Thomas was acting as a deputy sheriff under direction of his chief.

[5] But the contention is that Thomas' act, being a trespass *ab initio,* was not a lawful act and not within the scope of his employment, and therefore was an act for which the sheriff and his surety are not liable. Section 4157, Rem. Comp. Stat., provides the duties of a sheriff, among which is the duty to arrest all persons guilty of public offense. It is the sheriff's duty, to be exercised either in person or through his deputies, to arrest bootleggers. By § 4160 the sheriff is given the power to appoint deputies, "for whose official acts he shall be responsible to the amount of his bond." *Coles v. McNamara, supra.* By § 4155 the sheriff's official bond is provided for, the condition of the bond being that the sheriff shall faithfully perform all the duties of his office. The argument of these appellants is that Thomas committed a wrong, but it was not an "official" one. In behalf of this argument, discussion is had of the difference between acts done under color of office or by virtue of the office, and the ancient distinction between *colore officii* and *virtute officii* is refurbished and attractively presented.

Courts long ago, however, ceased to view with much tolerance this distinction, when liability for unwarranted acts on the part of peace officers is attempted to be evaded by their superior and his sureties; for, as has often been pointed out, if this distinction is carried to its legitimate conclusion, there would never be any liability but his own for the wrongful act of a subordinate peace officer. To recognize such a dis-

tinction would be to establish a rule which this court, in *Greenius v. American Surety Co.*, 92 Wash. 401, 159 Pac. 384, L. R. A. 1917F 1134, has already said is neither workable nor sensible.

"If an officer engaged in a search for either goods or persons can run amuck, saying, this I did in excess and in violation of my duty and my bondsmen are not, therefore, liable, we can imagine no case where a surety might be held. The primary purpose of a bond is to insure third parties against the mistakes and trespasses of officers when officially engaged."

"An official bond is a promise to the state and to all third parties that, in the execution of legal duty, the officer will do it well and without hurt to strangers to his process. The best argument against attempting to fix an arbitrary line of demarcation between acts done *colore officii* and those done in virtue of office is that the cases, after an hundred years of exposition, are in hopeless and interminable confusion. The later authorities preponderate, however, in favor of the doctrine that, if an officer have process against 'A' and, without reasonable ground for believing him to be the guilty person, execute it upon the person or property of 'B,' his sureties are liable where the bond is conditioned for the faithful performance of the duties of his office."

In the case thus quoted from, the earlier case of *Marquis v. Willard,* 12 Wash. 528, 41 Pac. 889, 50 Am. St. 906, where the distinction was attempted to be made use of, was criticized and, in effect, discarded. It is upon that case which the appellants principally rely as authority from this court. But, in so far as it expresses an opinion that the distinction referred to should exist, the case is now finally expressly overruled.

As early as the case of *Mace v. Gaddis,* 3 Wash. Terr. 125, 13 Pac. 545, the court held that it could not agree with those cases to the effect that where a sheriff

acted beyond his authority and his acts were purely trespass *ab initio,* they were not then done under color of his office and his bondsmen were not then liable. The court said:

"The weight of authority is the other way; and to the effect that acts which are entirely unauthorized by the office, . . . made the bondsmen liable."

The facts in *Crose v. Tony John,* 96 Wash. 216, 164 Pac. 941, bear a close resemblance to those in the case at bar, and although the court there said that the deputy sheriff was acting under color of his office, his act was of the same nature as that which Thomas performed, and the sheriff and his surety were held liable. The same defense was made in that case, that the deputy was not acting within the scope of his authority at the time he did the shooting. The court held that he was, and we so hold here. See, also, *Weber v. Doust,* 81 Wash. 668, 143 Pac. 148; *Kusah v. McCorkle,* 100 Wash. 318, 170 Pac. 1023, L. R. A. 1918C 1158; *Mitchell v. Hughes,* 104 Wash. 231, 176 Pac. 26; *Pavish v. Meyers,* 129 Wash. 605, 225 Pac. 633.

Authorities from other jurisdictions might be superimposed upon these to the same effect, but it is not necessary to quote any authority further than to cite 24 R. C. L., under the subject of Sheriffs, pp. 966 *et seq.,* where the modern rule finds this expression:

"On the general theory that sureties are not needed on a sheriff's bond if they are only to be held when the acts are legal, and because they vouch for the officer's acts, and bind themselves to make good any damage he may cause to anyone while acting under color of his office, the rule is that the unjustifiable killing, by an officer, of a person whom he has arrested is within the provision of his bond by which the surety undertakes that he shall well and truly discharge all the duties of his office. And a sheriff and the sureties on his official

bond are liable in a civil action for damages arising from the intentional or negligent shooting of a misdemeanant who flees to avoid arrest, although the officer merely fires his pistol in his direction to cause him to halt. The law which gives an officer the right to kill an escaping felon requires him to know that he is the felon, not an innocent person, whose life he is attempting to take. Hence, if a sheriff's deputies attempt to arrest an innocent person, erroneously supposing him to be a felon whom they have been sent to apprehend, and kill him as he tries to escape, the sheriff and his sureties are liable therefor. . . .

"The authorities almost uniformly hold that if in endeavoring to effect the arrest of one person an officer, acting under a writ, mistakes another for the person wanted, and arrests him, or in the attempt to make the arrest injures or kills him, this constitutes a breach of the official bond."

"Generally speaking, the purpose of an official bond is to provide indemnity against malfeasance and misbehavior in public office, the misuse of powers belonging to the office, and the assumption, under guise of official action, of powers not belonging to it. All acts so performed, though unlawful or wrongful, are official acts within the meaning of an undertaking that an officer shall faithfully and impartially discharge the duties of his office; and as such may be reasonably considered to have been within the contemplation of the sureties at the time they entered into the undertaking, as constituting a breach of its conditions. . . . The tendency of the legislation and the decisions of the courts of the different states is to hold the obligors upon official bonds liable as upon statutory undertakings, and to disregard objections purely technical in their character." Id. p. 956.

These appellants make objection to two of the court's instructions, in which the jury were told that, if Thomas failed to show by the evidence that he was justified in firing, then respondent was entitled to a verdict against all of the appellants. The objection to these instruc-

tions is that the court must have assumed that the act which Thomas was performing was an official one. Whether the act was one done, as we have already said, by virtue of his office or under color of his office, is of no importance, and the court was correct in assuming that the act was an official act. The only question for the jury was, whether it was justified or not. If it was not justified, Thomas and his superior and the surety were all equally liable. If it was justified, no one of them was liable.

There appearing no error in the record, the judgment is affirmed.

TOLMAN, C. J., MITCHELL, MAIN, and PARKER, JJ., concur.