[No. 23116.  *En Banc.*  January 28, 1932.]

JOHN WESLEY BIEHN *et al., Respondents,* v. CLAUDE G. BANNICK *et al., Appellants.*[1]

[1]Reported in 7 P. (2d) 567.

466

*Caldwell & Lycette, William H. Brinker, Robert Burgunder,* and *William G. Beardslee,* for appellants.

*William A. Gilmore,* for respondents.

HOLCOMB, J.—This action was instituted by respondents against appellants for twenty-five thousand five hundred dollars damages for false arrest, imprisonment and malicious prosecution. The chief adversaries in the litigation are respondents and appellant Underhill, a deputy under appellant Bannick, sheriff of King county. The surety company was sued as surety on the sheriff's bond.

This action arose out of a controversy as to the ownership of a certain Jersey-Guernsey cow which respondents had raised from a calf. They had kept it in their possession on their property in Kirkland until they exchanged equities in certain property with owners named Routt, Mrs. Routt being the step-daughter of Underhill. In making the exchange of properties between respondents and the Routts, according to the contention of respondents, they moved

to Seattle and left their cow in the possession of the Routts, allowing them to use the cow for taking care of her until respondents returned to another place they owned in Kirkland in the fall.

Underhill lived in Bothell, and at all times in the transactions hereinafter mentioned, and up to and including the time of trial, was the duly appointed, qualified and acting deputy sheriff of King county under sheriff Bannick. There was also a deputy sheriff in Bothell named Parker.

On October 2, 1929, Mrs. Biehn notified Mr. Routt, while on the ferry crossing to Kirkland, that they had returned to Kirkland to live, and wanted their cow. The next morning, Mrs. Routt went to Bothell and claimed that she sold the cow to her step-father, who took possession of the cow on October 5 and removed her from Kirkland to Bothell. On the same day, Mr. Biehn went to Mrs. Routt in Kirkland and demanded the return of the cow. Underhill claimed to have paid ten dollars cash and promised ninety dollars more for the cow. He admitted that, on October 6, Mrs. Routt informed him that respondents had demanded possession of the cow the day before, and that he knew they were claiming the cow as their own property.

On October 15, respondents went to Bothell and, acting under advice of their attorney, took the cow out of Underhill's pasture, took her back and placed her in a pasture near Kirkland, about three blocks from their home, because they had no pasture of their own. Between October 15 and Sunday, October 20, when Underhill, assisted by deputy Parker, arrested respondents, Underhill was informed by several persons that respondents had the cow. At all times during that time, Underhill knew where the cow was, but made no arrest until Sunday morning, at which time he advised respondents that they could not give bail if they

had ten thousand dollars, because it was Sunday, from which it could be fairly deduced that he had some personal malice toward respondents.

The next day, Underhill personally filed a charge of grand larceny against respondents, accusing them of stealing the cow, and they were admitted to bail. A few days later, Underhill obtained a search warrant for respondents' home, and, accompanied by another deputy sheriff, searched their home, demanded the key to the pasture, again threatened them with arrest, returned the next morning and took the cow from the pasture, where it was being kept, back to Bothell.

At the time the criminal charge of grand larceny was tried in King county, a civil suit in replevin for possession of the cow was pending between respondents and the Underhills, which was subsequently decided by a jury in favor of respondents, and legal possession of the cow obtained on the judgment therein.

In their first cause of action, respondents alleged that, on Sunday morning, October 20, 1929, without any warrant or any process, Underhill arrested respondents and took them in an automobile to the King county jail. In paragraph V of their complaint, they allege that appellant Underhill was at all times in the complaint mentioned and now is a duly and regularly appointed deputy sheriff by appellant Bannick, sheriff of King county and had duly qualified and was acting as such at all times hereinafter mentioned; and, under the laws of Washington, the sheriff and his surety on his official bond were responsible and liable to the amount of the official bond for the default, misconduct and dereliction of his deputy Underhill, as hereinafter more specifically detailed.

In subsequent paragraphs of the complaint, they allege the arrest on Sunday, as heretofore stated, by Underhill; that it was under the orders of his superior,

the sheriff, and without reasonable or probable cause, and in a rude and insolent manner, without any order, warrant or process authorizing him to so arrest; that Underhill, with force, arrested them, used abusive language, and stated to them that they were arrested on Sunday so that they could not give bail, upon a charge of grand larceny, accusing them of stealing a cow which he claimed as his own, but which he knew was the property of respondents; that, immediately thereafter, Underhill placed them in his automobile, while threatening to use force, driving them around the public highway by way of Bothell into Seattle, where he caused them to be incarcerated in the jail at about the hour of noon; where they were confined during the remainder of Sunday and all of Sunday night and the following Monday until noon, among criminals of the lowest and worst type; that, on the following day, Underhill filed a charge of grand larceny against them, accusing them of stealing the cow, before John B. Wright, justice of the peace; that the arrest and imprisonment of respondents by Underhill was without reasonable or probable cause, and was done maliciously by him for the purpose of restraining them and depriving them of their liberty.

Further allegations were made that such proceedings were had on the charge of grand larceny in the superior court for King county that they were duly and regularly acquitted by a jury, and the criminal proceedings thereby fully terminated; that, by reason of such false arrest and false imprisonment and restraint of their liberty, respondents were injured in their good name and reputation, subjected to disgrace, humiliation and public suspicion from the citizens of King county, and among their friends and acquaintances; that Underhill caused wide publicity of their arrest and imprisonment, thereby causing them public dis-

grace, humiliation and suspicion among the citizens of King county, and particularly among the towns on the east side of lake Washington, etc.; that respondents, by reason thereof, suffered and continued to suffer great mental anguish and nervous strain, were deprived of their rest and sleep for many nights, and rendered ill in mind and body, and were doubted by their friends and shunned by others; that the health of both respondents had been generally impaired by reason thereof.

Those were the allegations upon which respondents, in their first cause of action, claimed damages of twenty-five thousand dollars against all appellants.

The second cause of action readopted the allegations of several paragraphs of the first cause of action, and then alleges, among other things, that appellant Underhill on October 20, while acting as a deputy sheriff and acting under the orders of appellant Bannick, sheriff, entered the home of respondents without an order, warrant, or any process, and by force arrested them and confined them in the King county jail in Seattle; that, on October 21, 1931, appellant Underhill filed a complaint under oath in the justice of the peace court of John B. Wright, charging respondents with grand larceny, by having feloniously stolen a certain Jersey-Guernsey cow alleged to have belonged to Underhill, but, in fact, known by him to be the property of respondents, and procured the justice of the peace to issue a warrant for the arrest of respondents upon that criminal charge; that they were required to and did furnish bail in the sum of one thousand dollars to answer the criminal charge; that, in such filing of the criminal complaint against respondents and prosecuting them on that charge, appellant Underhill acted wantonly, unlawfully, maliciously, and without reasonable or probable cause, but solely for the purpose of

injuring respondents and their good name and reputation; that they were thereafter acquitted by the verdict of a jury; and that, by reason of the malicious prosecution of respondents by appellant Underhill and while acting under the orders of appellant Bannick, respondents were compelled to expend and did expend the reasonable sum of five hundred dollars as attorney's fees in defending themselves from such malicious prosecution to the further damage in the sum of five hundred dollars.

Appellants joined in one answer to the complaint of respondents, denying generally all of the allegations of the complaint except the relations between the parties respondent and appellant, admitted that appellant surety company was the surety on the official bond of appellant Bannick as sheriff of King county in the sum of five thousand dollars, admitted that appellant Underhill was a deputy sheriff appointed by sheriff Bannick, and denied all the remainder of paragraph V of respondents' complaint, as heretofore set out.

Motions separately made by each of appellants for nonsuit and directed verdict were overruled by the court, and the jury returned a verdict against all of appellants in the sum of $3,500, of which $3,000 was awarded on the first and $500 on the second cause of action. Motions for judgment *non obstante veredicto* by each and all of appellants were also overruled. On motion for a new trial, the trial court found the verdict excessive as to the first cause of action and granted a conditional reduction in the sum of $1,000, which reduction was accepted by respondents and judgment entered accordingly.

The first error assigned and argued by appellants is in the refusal to grant a nonsuit as to respondents' second cause of action. We prefer to discuss this contention later.

The second assignment of error argued by appellants consists of two parts: (1) In overruling their motion for directed verdict and judgment n. o. v., because respondents failed to rebut the *prima facie* defense of probable cause arising from the commitment by the examining magistrate; and, (2) in refusing to give to the jury a proposed instruction to the effect that a commitment by a magistrate constitutes *prima facie* evidence of probable cause.

Appellants concede in their briefs that the evidence conflicted as to whether Underhill purported to act as a deputy sheriff or as a private individual in making the arrest. It is correctly asserted in this connection that there was no evidence whatever that appellant Bannick, the sheriff, in any way caused the arrest or prosecution as alleged in the complaint or that he even knew of it.

The trial court, in stating the issues to the jury, stated that the issues to be tried and determined by them were: (1) Was the arrest and subsequent imprisonment of respondents by Underhill caused by Underhill without reasonable or probable cause? (2) Was the arrest, imprisonment and subsequent prosecution malicious on the part of Underhill? and (3) If they found affirmatively as to the first and second propositions, then what damage, if any, did respondents suffer by reason of such false arrest and imprisonment and malicious prosecution?

The trial court refused to separate the liability as to Underhill and his principal the sheriff and the sheriff's surety.

Respondents based their action against the sheriff and his bond under Rem. Comp. Stat., § 4160, which authorizes the sheriff to appoint as many deputies as he thinks proper, for whose official acts he shall be responsible to the amount of his bond, and

making the sheriff responsible on his official bond for the default or misconduct in office of his deputies. Under this statute and our decisions, whatever may be the state of the law elsewhere, the acts or omissions of Underhill as deputy were the acts or omissions of Bannick as sheriff. *Kusah v. McCorkle,* 100 Wash. 318, 170 Pac. 1023. In this state, the distinction between acts of a peace officer done *colore officii* and *virtute officii,* are disregarded, and they are treated as wrongful acts in either case for which the surety upon the bond of the officer, his principal, under our statute are liable. *Greenius v. American Surety Co.,* 92 Wash. 401, 159 Pac. 384, L. R. A. 1917F 1134; *Jahns v. Clark,* 138 Wash. 288, 244 Pac. 729.

In all three of the cases herein cited occur reviews of the texts and cases generally as to the liability of a sheriff for the acts of his deputy. In the *Jahns* case, *supra,* a sheriff was held liable for the act of his deputy where the deputy had been sent out by the sheriff to capture some bootleggers, and the deputy shot at the car of two young men who were not bootleggers and were not about to commit any crime or misdemeanor, one of the young men being seriously injured by being shot by the deputy. See, also, *Crose v. Tony John,* 96 Wash. 216, 164 Pac. 941.

In *Johnson v. Williams' Admr.,* 111 Ky. 289, 63 S. W. 759, 54 L. R. A. 220, 98 Am. St. 416, the court quoted approvingly from Murfree on Sheriffs, § 60, which we further quote, language adopted from a Massachusetts case (*Knowlton v. Bartlett,* 1 Pick. 273) as follows:

" 'But an official act does not mean what a deputy might lawfully do in the execution of his office. If so, no action could ever lie against the sheriff for the misconduct of his deputy. It means, therefore, whatever is done under color or by virtue of his office.' To hold the deputy and his sureties liable to the sheriff on his bond, it is not necessary that the deputy should be

acting under color of some writ, but if he is acting under color of his office, and professing so to act, and inducing others interested to believe he is acting *colore officii*, he and his sureties will be bound by such acts. No other rule would be safe. Sureties are not needed on a sheriff's bond, if they are only to be held when he acts legally. They vouch for his acts, and bind themselves to make good any damage he may cause to any one while acting under color of his office.''

In the instant case, the evidence was amply sufficient to submit the question of whether appellant Underhill falsely arrested and imprisoned respondents without reasonable or probable cause, under proper submission of the case to the jury by instructions, and his acts as deputy sheriff would bind both his principal, the sheriff, and the surety of the sheriff on his official bond.

Requested instructions Nos. 16, 19 and 20 did not state the law correctly and were properly refused.

The question of whether there was or was not reasonable and probable cause for the arrest and detention of respondents of the larceny of the cow, was one of fact for the jury. If appellants showed no sufficient justification to satisfy the jury on that question, then respondents would be entitled to recover against them. *Larson v. Erickson,* 142 Wash. 236, 252 Pac. 922. Compare, *Bartolomeo v. Richards,* 154 Wash. 642, 282 Pac. 925.

The next complaint of appellants is that the court erred in instructing the jury that Underhill was acting as a deputy sheriff. It was alleged, proven, and Underhill admitted, that, at the time of the arrest of respondents, he acted as deputy sheriff. There is no merit in this contention, under our cases heretofore cited.

Complaint is made of the refusal of the court to give a certain instruction to the effect that, if the

jury should find for respondents, then they should award them only such a sum as would fairly and justly compensate them for the injury, if any, the jury may find respondents have suffered. A further part of a requested instruction with respect to exemplary damages not being permitted was given by the trial court. Respondents contend that the first part of the instruction as above stated, in effect, was given by the trial court in instruction thirteen.

An examination of that instruction, which is quite lengthy, attempting to contain all the elements of the measure of damage, if respondents should recover, shows that it omits the element of fair and just compensation for such injury as respondents should have suffered. The instruction stated generally that respondents, if entitled to recover for such false arrest, false imprisonment and malicious prosecution, if without reasonable or probable cause, would be entitled to recover such damages, if any, they or either of them may have suffered by reason of the arrest, imprisonment and prosecution, including the publicity of the charges, disgrace or humiliation caused by the arrest and imprisonment, or any mental or physical illness suffered by respondents, or either of them, etc., including expenses of their defense of the prosecution, for reasonable attorney's fees not exceeding the amount claimed in the complaint; and limited the damages that might be awarded to the sum of five thousand dollars against appellants Bannick and his surety and to the sum claimed in the complaint as against appellant Underhill.

Although we might not reverse the case because it did not more specifically limit the damages to such as were fairly and justly compensatory, we think that the entire submission of the case to the jury on the element of the malicious prosecution charge of the

complaint was so intermingled with all the other wrongs and injuries complained of, for which appellant Bannick and his surety would be liable, that they were prejudiced.

The institution of the prosecution by appellant Underhill, so far as the record in this case shows, was entirely his own personal act. There is no duty imposed by statute or common law in this state upon a deputy sheriff to institute prosecutions against others, even though he may believe there is probable cause for the prosecution. It was done by him individually and not officially. *State ex rel. Ostman v. Meyer,* 120 S. W. (Mo. App.) 116; *Burge v. Scarbrough,* 211 Ala. 377, 100 South. 653. See notes to *State v. Kolb,* 201 Ala. 439, 78 South. 817, 1 A. L. R. 218 at 247. Compare *Arishin v. King County,* 103 Wash. 176, 173 Pac. 1020.

There can be little question, under the facts shown in this case, but that Underhill would be liable for the malicious prosecution of respondents on the grand larceny charge, but that would not render appellants Bannick and his surety liable and responsible on that charge, unless sheriff Bannick directed, or expressly or impliedly authorized it, of which there is no evidence.

Respondents cite and quote *Jones v. Jenkins,* 3 Wash. 17, 27 Pac. 1022, to sustain their position that all of these matters were issues for the jury as to all these appellants. That was a case between two private citizens as litigants, in which one of them was alleged to have made false and malicious criminal charges against the other. It would sustain the individual liability of Underhill. It is not such a case as this.

The first error assigned would be valid (*Torgeson v. Hanford,* 79 Wash. 56, 139 Pac. 648) but that the objection to the evidence of the agreed attorney's

fee, when offered, was the general one that it was "incompetent, immaterial and no proper foundation laid."

In *Dahlstrom v. Northern Pacific Railway Co.,* 98 Wash. 390, 167 Pac. 1078, and *Great Western Motors, Inc. v. Hibbard,* 112 Wash. 541, 192 Pac. 958, we held that the specific reason that the reasonable value is the proper inquiry, must be pointed out to make an objection sufficient.

But appellants should not be bound to meet an amount agreed to be paid, unless it is made to appear that it was the reasonable value thereof. *Elston v. McGlauflin,* 79 Wash. 355, 140 Pac. 396, Ann. Cas. 1916A 255.

Only two other alleged trial errors, in view of the fact that the case must go back for a retrial, need be discussed.

The contention of appellants that there was misconduct on the part of the attorney for respondents and of the trial court by referring to the fact that the sheriff was secured by a surety bond, is untenable. *Jensen v. Schlenz,* 89 Wash. 268, 154 Pac. 159; and *Lucchesi v. Reynolds,* 125 Wash. 352, 216 Pac. 12, cited by them to sustain their contention, were cases where the surety or insurance companies were not directly involved in the actions, and it was sought to show indirectly that such companies would stand the losses. Such cases are not applicable where the surety company is a proper and probably, in such cases as this, a necessary party to the action.

One other trial error was admitted by the trial judge, in his memorandum opinion denying a new trial, in rejecting the offer of respondents to establish that the action of the justice of the peace in binding respondents over for trial on the criminal charge, was based on the fraud or perjury of appellant Underhill.

478

On retrial, if such evidence is produced and offered in competent manner, it should be received.

Other trial errors urged and argued by appellants may not occur on retrial, and the amount of recovery is now of no concern.

For the error in the manner of submitting the cause to the jury with the intermingling of the element of malicious prosecution of respondents by appellant Underhill as being an official act which would bind appellant Bannick and his surety, the judgment is reversed and remanded, with instructions to proceed in conformity herewith.

All concur.