433 P.2d 653

**John DOGARIN, Appellant and Cross Appellee,**

**v.**

**Robert L. CONNOR, Western Surety Company and Fidelity and Casualty Company of New York, Appellees,**

**and**

**Fidelity and Casualty Company of New York and Joe D. Hill and Juanel S. Hill, Cross Appellants.**

**No. 2 CA–CIV 214.**

Court of Appeals of Arizona.

Nov. 9, 1967.

Knez & Glatz, by Nick Knez, Tucson, for appellant and cross appellee.

Holesapple, Conner, Jones, McFall & Johnson, by Donald E. Dickerman, Tucson, for appellee, Western Surety Company.

Spaid, Fish, Briney & Duffield, by Richard Briney, Tucson, for appellee and cross appellant, Fidelity and Casualty Co. of New York.

MOLLOY, Judge.

This appeal presents the question of whether certain activities of a deputy sheriff were "official" acts so as to make the county sheriff and the bonding companies of the sheriff and the deputy liable for damages resulting from these acts.

Western Surety Company furnished the official $10,000 bond required by law, A.R.S. § 38–252, of Robert L. Connor, who was the duly elected sheriff of Santa Cruz county in November and December of 1961, during which time all events with which we are concerned occurred. Fidelity and Casualty Company of New York furnished the official $2500 bond which the law permitted Sheriff Connor, A.R.S. § 38–463, to require of his deputy, Joe D. Hill.

Deputy Hill was employed as a full-time "district" deputy sheriff of Santa Cruz county with headquarters at Patagonia, Arizona. He was on duty twenty-four hours a day, with no regular assigned hours of work. On November 4, 1961, Deputy Hill was helping officials of the State Fish and Game Commission and the Pima County Sheriff's Department maintain a "checking station" or "roadblock" at a point in Pima county approximately 2,000 feet north of the boundary line between Pima and Santa Cruz counties. The purpose of the checkpoint was to ascertain if game laws were being violated and to gain information as to cars going in and out of deer-hunting country, so that if any hunter failed to check out, a search and rescue could be conducted. Hill was specifically directed by Sheriff Connor to assist this activity and to fill out a card on each and every vehicle entering Santa Cruz county. Hill also held a "special

deputy" sheriff's commission from Pima county, but on the day in question was under no directions from the sheriff of Pima county.

At about 4 p. m., on this day, a jeep in which the plaintiff, John Dogarin, was a passenger stopped at the checkpoint. An argument ensued between Deputy Hill and the plaintiff over a beer bottle in the jeep. The argument culminated in Deputy Hill's arresting the plaintiff. The plaintiff was transported, handcuffed, in Hill's car to Patagonia, where the plaintiff was brought before the justice of the peace of No. 2 precinct, Santa Cruz county. A complaint of disturbing the peace was sworn to by Deputy Hill and on the basis of the warrant issued on this complaint, the plaintifff was placed in the Santa Cruz county jail at Nogales.

■ The charge against the plaintiff never went to trial in Santa Cruz county, presumably because it became apparent that the justice court in Santa Cruz county had no jurisdiction over an offense allegedly committed in Pima county. A.R.S. § 22–301. The briefs filed in this court agree that the "case" was "transferred to Pima County." [1] When the case came before the justice court, precinct No. 2 of Pima county, for trial, Hill was present to testify but the complaint was dismissed on motion of the deputy county attorney of Pima county for "lack of evidence."

Plaintiff brought an action against Hill, Connor and the two bonding companies for damages, which action was tried under the legal theories of (1) false arrest, (2) assault and battery and (3) malicious prosecution. The case was submitted to the jury under special interrogatories in pursuance

1. We accept this statement for the purposes of this appeal, because it is not disputed by the parties. However, we note that this may not have been a "transfer" of a case. There are two complaints in this record. The one bears the caption of the Santa Cruz county justice court, which complaint charges an offense within the precinct of *that* court. The other complaint is one bearing the caption of the Pima county jus-

tice court, and charges an offense within the precinct of *that* court. However, both complaints bear the date of November 4, 1961, and both purport to have been signed before justice of the peace, Oliver J. Rothrock, the justice of the peace of precinct No. 2 in Santa Cruz county. See note 5 infra, as to whether a complaint charging a misdemeanor may be "transferred" when filed in the wrong precinct and county.

of Rule 49(g), R.Civ.P., 16 A.R.S. The jury returned answers (1) that Hill had "falsely arrested" the plaintiff, fixing damage for this at $450; (2) that Hill had committed an "assault and battery" on the plaintiff, fixing damage at $4,675; (3) that Hill had "falsely and maliciously and without probable cause instituted a criminal prosecution" against the plaintiff, fixing damage at $2,500; (4) that $5,500 of the damage sustained had occurred in Santa Cruz county, as opposed to Pima county; and (5) that the plaintiff was entitled to punitive damages in the sum of $2,500.

On the basis of these answers, the superior court entered a judgment (1) in favor of the plaintiff and against Hill for the damage found by the jury, (2) in favor of the plaintiff and against Fidelity, Hill's bonding company, in the amount of $450, (3) against the plaintiff and in favor of Connor and Western Surety on all counts and (4) in favor of Fidelity and against Hill for the $450 judgment of the plaintiff against Fidelity, plus $1,665 as and for expense incurred by Fidelity in defending the subject action.

■ The plaintiff appealed from those portions of the judgment denying relief against Connor and Western Surety and limiting recovery against Fidelity to $450. Hill cross-appealed, but has filed no briefs in this court, and we deem his appeal to be abandoned. See Country Lands, Inc. v. Swinnerton, 151 Conn. 27, 193 A.2d 483 (1963); 5 C.J.S. Appeal & Error § 1388, at pp. 510–513; cf. Davis v. Kleindienst, 64 Ariz. 67, 165 P.2d 995 (1946). Fidelity cross-appealed from the $450 judgment against it.

The pertinent condition in the bond of Western Surety reads:

"* * * if the Principal [Connor] shall faithfully perform such duties as may be *imposed on him by law * * *.*" (Emphasis added)

The condition of Fidelity's bond reads:

"* * * if the said Principal Joseph D. Hill as such Deputy Sheriff in and *for the Santa Cruz County* aforesaid, shall * * * well, truly and faithfully execute and perform all *official duties now required of him by law * * *.*" (Emphasis added)

■ These being statutory bonds, they must be read to include liabilities applicable by statute. 50 Am.Jur. Suretyship § 33, at 926; 11 C.J.S. Bonds § 25c, at pp. 410–411. The obligations of both the principals and sureties on these bonds are thus controlled by this statutory language:

"The condition shall be that the principal will well, truly and faithfully perform all *official duties required of him by law.*" (Emphasis added) A.R.S. § 38–256 (in part).

"Every official bond executed by an officer pursuant to law is in force and obligatory upon the principal and sureties thereon for any and all breaches of the conditions thereof * * * whether the breaches are committed or suffered by the principal officer, his deputy or clerk." A.R.S. § 38–259 (in part).

"Every officer is liable on his official bond for any official negligence or misconduct on the part of his deputies, clerks or assistants * * *."

A.R.S. § 38–463, subsec. A (in part).

These statutes are in accord with the general law that the liability of a sheriff and his bondsmen extend to and are limited by the "official" acts of the deputy. 47 Am. Jur. Sheriffs § 158, at 932–35 and § 112, at 897–898; 1 Anderson on Sheriffs §§ 49, 63, at 44 and 59 (1941); Annots., 1 A.L.R. 222, 236; 3 A.L.R. 1623; 102 A.L.R. 174, 182; 116 A.L.R. 1064, 1070; 80 C.J.S. Sheriffs and Constables § 55 at pp. 232–238, and § 179, at pp. 424–426.

The problem of vicarious responsibility here presented can be traced back in English jurisprudence for several centuries and during much of this time, courts have tortured themselves with the artificial concepts of "acts virtute officii" and "acts

colore officii," [2] the law first enunciated being that as to the former there was liability on the principal and his surety, and as to the latter, no liability. See, e. g., People v. Pacific Surety Co., 50 Colo. 273, 109 P. 961 (1910); Jones v. Van Bever, 164 Ky. 80, 174 S.W. 795, L.R.A.1915E, 172 (1915); Bond v. Ward, 7 Mass. 123, 5 Am.Dec. 28 (1810); Annot., 8 L.R.A.,N.S., 1223 (1907). In the process of an evolution towards greater liability, "modern" appellate decisions announce that there is liability for acts done "colore officii," 47 Am.Jur. Sheriffs § 118, at 902. This appears to be the state of the evolution of this law in this state. Chaudoin v. Fuller, 67 Ariz. 144, 192 P.2d 243 (1948).

In *Chaudoin,* our Supreme Court quoted with approval from Abbott v. Cooper, 218 Cal. 425, 23 P.2d 1027, 1030 (1933), in such manner as to give a measure of determining when an act is done under color of office:

" 'To hold the deputy and his sureties liable to the sheriff on his bond, it is not necessary that the deputy should be acting under color of some writ, but if he is acting under color of his office, and *professing so to act, and inducing others interested to believe he is acting colore officii,* he and his sureties will be bound by such acts. No other rule would be safe. Sureties are not needed on a sheriff's bond, if they are only to be held when he acts legally. They vouch for his acts, and bind themselves to make good any damage he may cause to any one while acting under color of his office.' " (Emphasis added) 67 Ariz. at 149–150, 192 P.2d at 247.

We believe under this test that Deputy Hill was acting under the color of his office as a deputy sheriff of Santa Cruz county in making the arrest of the plaintiff and taking him to the magistrate in Patagonia. One of the statutory duties of a sheriff is:

"Arrest and take before the nearest magistrate for examination all persons who attempt to commit or who have committed a public offense." A.R.S. § 11–441, subsec. A(2).

At the time of this arrest, Hill was being paid for his work as a Santa Cruz county deputy, he was wearing a badge as deputy sheriff of Santa Cruz county, he had the insignia of the sheriff's office on the arms of his shirt, which was in open view, he used a car marked with the insignia of the Santa Cruz sheriff's office, he reported this arrest to the Santa Cruz county sheriff's office and the report was "approved" in that office by Sheriff Connor.

There is no evidence in this record that Hill was purporting to act as a special deputy sheriff of Pima county and it is our view that the holding of the other commission can only be viewed as coincidental as far as this arrest is concerned.

In *Chaudoin,* the finding by the trial judge that a person, who was both a deputy sheriff and a constable, acted on the occasion in question as a deputy sheriff was affirmed on "conflicting evidence" (67 Ariz. at 151, 192 P.2d 243). However, we do not find sufficient conflict in the evidence here to support any finding by the trial court that Hill acted on the occasion in question as a deputy sheriff of Pima county. Moreover, the judgment of the trial court, which found Fidelity liable only in the sum of $450 (the amount allowed by the jury for the false arrest occurring in Pima county), is not indicative that the trial court found that Hill was acting as a Pima county deputy in making this arrest (Fidelity being liable only for his acts as a Santa Cruz county deputy).

At least one other court, faced with a similar problem as that presented here, has reached the same result as this court now reaches. State ex rel. Lenrod v. French, 222 Ind. 145, 51 N.E.2d 858, 149 A.L.R. 1084 (1943); and see Drake v. Keeling, 230 Iowa 1038, 299 N.W. 919 (1941). We do not think the purpose of requiring these

---

**2.** An early enunciation of this dichotomy is found in the English case of Alcock v. Andrews, 170 Eng.Reprints 440 (1788).

bonds would be served by holding that their liability cannot extend as much as 2,000 feet beyond a county line.

. ▆▆▆ As to the "assault and battery" claim,[3] it is even more apparent that there was liability on these bonds. The transcript indicates that this claim related to allegedly oppressive and unnecessarily harsh treatment of the plaintiff from the time of his arrest at the roadblock until a warrant was issued in the office of the justice of the peace in Patagonia. Substantial portions of this conduct unquestionably occurred in Santa Cruz county and we see no justification for not charging this tortious conduct against both Sheriff Connor and the two bonding companies.

▆▆▆ As to the malicious prosecution claim, we believe we have crossed a delicate line and are in the area of a private act. The filing of complaints is not one of the duties outlined in A.R.S. § 11–441, which sets forth the duties of the sheriff. A complaint may be laid before a magistrate by any person. Rule 1, R.Crim.P., A.R.S. 17; and see State v. Currier, 86 Ariz. 394, 347 P.2d 29 (1959). Once the complaint is filed, the law requires the magistrate to make an independent examination to determine that there is reasonable ground to believe that an offense has been committed by the accused. Rules 1 and 2, R.Crim. P., 17 A.R.S. Once a warrant has been issued for the arrest, further detention of the accused is in pursuance of the warrant. See A.R.S. § 13–1417, Rules 1 and 2, R.Crim.P. In order to establish the claim for malicious prosecution, the plaintiff must establish both malice on the part of the defendant and an absence of probable cause, two separate elements. Tate v. Connel, 3 Ariz.App. 534, 416 P.2d 213 (1966).

Generally, official bonds of sheriffs are not construed liberally against the obligor, as in the case of most commercial surety bonds, 50 Am.Jur. Suretyship § 318, at 1112–13; 72 C.J.S. Principal and Surety § 102 at pp. 583–585; but are given a "strict" but "reasonable" construction. 47 Am.Jur. Sheriffs § 115, at 899–900; 80 C.J.S. Sheriffs and Constables § 181, at pp. 428–430. The reason for this approach may lie both in the public nature of the employment and in the fact that the final obligor on the bond is the officer himself who had no part in the selection of the language used in the bond.

That Arizona is in accord with this general approach is indicated by a decision such as Weidler v. Arizona Power Co., 39 Ariz. 390, 7 P.2d 241 (1932), which refused to find liability on the official bond of a treasurer for negligently delaying the deposit of checks accepted for taxes (the bank becoming insolvent in the interim), the court holding that the treasurer had no authority under the law to accept checks in payment of taxes.

. The only appellate decision which has come to our attention directly in point as to whether malicious prosecution by a deputy can be an "official act" is Biehn v. Bannick, 166 Wash. 465, 7 P.2d 567 (1932). *Biehn* holds deputy, sheriff and bonding companies liable for false arrest and imprisonment, but refuses to extend this liability to malicious prosecution. The following language in that case is pertinent:

"The institution of the prosecution by appellant Underhill [deputy sheriff], so far as the record in this case shows, was entirely his own personal act. There is no duty imposed by statute[4] or common

---

3. There would appear to have been no need to separate this claim from the one labeled "false arrest." See 32 Am.Jur. 2d False Imprisonment § 113, at 161–62; and 35 C.J.S. False Imprisonment § 65c, at pp. 772–773.

4. At the time of this decision, § 4173 of Remington's Revised Statutes of Washington (1932) read: "It shall be the

duty of all constables and all sheriffs to make complaint of all violations of the criminal law which shall come to their knowledge within their respective jurisdictions." This appears to have been a part of Washington's statutory law at least since 1881. See "Legislative History" under Wash.Rev.Code Ann. § 36.28.011 (1964).

law in this state upon a deputy sheriff to institute prosecutions against others, even though he may believe there is probable cause for the prosecution. It was done by him individually and not officially. [citations omitted]

"There can be little question under the facts shown in this case but that Underhill would be liable for the malicious prosecution of respondents on the grand larceny charge, but that would not render appellants Bannick and his surety liable and responsible on that charge, unless Sheriff Bannick directed or expressly or impliedly authorized it, of which there is no evidence."

7 P.2d at 571.

The law of *Biehn* is accepted as good law in 1 Anderson on Sheriffs (1941) in this language:

"The sheriff is likewise not responsible for damages caused by deputy's malicious prosecution not authorized by the sheriff." § 63, at 59.

We need not adopt this blanket rule to affirm the finding of no liability as to the malicious prosecution count. In the instant case, the circumstances surrounding the filing of this criminal complaint or complaints in Santa Cruz and/or Pima counties[5] is not developed in the record.

This case was submitted to the jury in pursuance of Rule 49(g), R.Civ.P., 16 A.R. S. The plaintiff raises no question as to the propriety of the manner of the submission of this case to the jury. Rule 49(g) provides, in part, that all issues omitted from submission to the jury are auto-

matically submitted to the court for decision. On appeal, this court must construe all evidence favorably to uphold the judgment of the trial court, Sulger v. Maslin, 90 Ariz. 70, 365 P.2d 1113 (1961); Sturges v. Tongeland, 83 Ariz. 148, 317 P.2d 941 (1957); Bade v. Drachman, 4 Ariz.App. 55, 417 P.2d 689 (1966).

The arrest report made by Hill, and approved by Sheriff Connor, contains no mention of a prosecution, and as we shall see when we examine this report in more detail (in connection with the question of whether the sheriff and his bonding company are liable for the punitive damages assessed by the jury), there is nothing in the report suggesting lack of probable cause or malice. The record here is sufficiently ambivalent so as to permit a finding that Hill brought this prosecution either as a private citizen or as a special deputy of Pima county, the only county in which this charge could have been tried. Hence, we do not set aside the judgment rendered below as to the malicious prosecution claim.

■■■■■ As to the liability of Sheriff Connor and his bonding company for punitive damages, we believe here also that the trial court must be affirmed. Our Supreme Court has declared the law to be:

"A sheriff may not be held for punitive damages for the acts of his deputy unless he has directed, participated in, acquiesced or ratified those acts."

Boies v. Cole, 99 Ariz. 198, 205, 407 P.2d 917, 922 (1965).

While there may be evidence of ratification in this record, it is in no sense con-

---

5. See note 1 supra. Whether there is any procedure for "transferring" a criminal complaint filed in the wrong precinct and/or county is a debatable issue. Compare State ex rel. Corbin v. Superior Court, 100 Ariz. 362, 364, 414 P. 2d 738, 739–740 (1966), which indicates that a felony complaint laid before a magistrate for preliminary hearing may be "transferred," *within the county* to the proper precinct, with In re Abbey, 28 Ariz. 383, 391, 237 P. 179, 181

(1925), which indicates that the "jurisdiction" of the justice court is "limited to offenses committed in his precinct" under para. 1308, Penal Code of 1913 (now A.R.S. § 22–301) and that, when such defect is apparent, the complaint should be "dismissed." Also see Leiby v. Superior Court, 101 Ariz. 517, 519, 421 P.2d 874 (1966), holding that there is no "jurisdiction" in the superior court to "transfer" a probate petition filed in the wrong county.

clusive. As previously indicated, there is evidence that the sheriff approved the arrest report of Deputy Hill. However, if the facts as set forth in this arrest report were true, there would have been every justification for Deputy Hill's arrest of the plaintiff.[6] In this state, a private person may make an arrest for a misdemeanor amounting to a breach of the peace committed in his presence. A.R.S. § 13–1404, subsec. A, par. (1).

We believe the *Boies* decision intends that before a sheriff may be liable for punitive damages for conduct of a deputy, he must in some way approve of wrongful conduct, having reason to know that the conduct so approved is reprehensible. Here the evidence only indicates that the sheriff knew of facts which, if true, would indicate that his deputy was doing something that the law would commend any private citizen for doing. Under these circumstances, we do not believe that punitive damages are merited against either Connor or his bonding company.

We need not deal with the problem of whether Fidelity should be liable for the punitive damages assessed against Deputy Hill for the reason that its bond will be exhausted by the judgment on the wrongful arrest and assault and battery charges.

Those portions of the judgment in favor of the plaintiff and against the defendants Hill are affirmed, as are those portions of the judgment finding in favor of the defendants Connor and Western Surety on the malicious prosecution claim and the claim for punitive damages. The judgment against Fidelity in the sum of $450 is reversed with instructions to the trial court to enter judgment in favor of the plaintiff and against Fidelity in the full amount of its bond, $2500. The judgment of Fidelity against the defendants Hill is modified so as to include the additional judgment rendered against Fidelity. The judgment in favor of Sheriff Connor and Western Surety on the claim for false arrest and assault and battery is reversed with instructions to enter judgment in favor of the plaintiff and against these defendants in the sum of $5,125. The case is remanded to the lower court for further proceedings insofar as the cross-claim of Western Surety against Sheriff Connor is concerned.

KRUCKER and ALICE TRUMAN, JJ., concur.

NOTE: Judge JAMES D. HATHAWAY having requested that he be relieved from consideration of this matter, Judge ALICE TRUMAN was called to sit in his stead and participate in the determination of this decision.

---

**6.** The arrest report (plaintiff's exhibit No. 9) stated in part:

" * * * Mr. John Dogarin reached out of vehicle and grabbed me by the front of shirt and badge. I informed him this incident gave him no right to put his hands on me. At this he became very abusive—cursing and practically screaming, creating a scene on a public highway."

Arizona's breach of the peace statute reads, in part:

"A. A person is guilty of a misdemeanor who maliciously and wilfully disturbs the peace or quiet of a neighborhood, family or person by:

"1. Loud or unusual noise,

"2. Tumultuous or offensive conduct.

"3. Threatening traducing, quarreling, challenging to fight or fighting.

"4. Applying any violent, abusive or obscene epithets to another."

A.R.S. § 13–371, subsec. A.